# IN THE COURT OF APPEALS OF IOWA

No. 22-1356
Filed November 8, 2023

**BRYAN LAMARR MITCHELL,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Scott County, Mark R. Lawson, Judge.

An applicant appeals the district court decision denying his application for postconviction relief from his conviction for first-degree murder. **AFFIRMED.**

Stuart G. Hoover, East Dubuque, Illinois, for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee State.

Considered by Greer, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Bryan Mitchell appeals the district court decision denying his application for postconviction relief (PCR) from his conviction for first-degree murder. Mitchell has not shown he received ineffective assistance based on defense counsel's failure to depose a witness before trial. Accordingly, we affirm the decision of the district court.

## I.     Background Facts & Proceedings

The facts relating to Mitchell's underlying convictions are set out in *State v. Mitchell*, affirming Mitchell's conviction for first-degree murder, willful injury, going armed with intent, and possession of a firearm as a felon. No. 05-0126, 2006 WL 132083, at *1–2 (Iowa Ct. App. Jan. 19, 2006). On August 9, 2004, Mitchell was at the home of Marchelle Miller in Davenport, along with several other people. *Id.* at *1. Grayling Churn arrived at Miller's home and began arguing with Miller's son, Wade Jones, and Mitchell. *Id.* There was evidence that Mitchell went into Miller's house and retrieved a gun kept by Jones. *Id.* A witness saw a man wearing orange pants shoot Churn. *Id.* at *2. Mitchell was wearing orange sweatpants at the time. *Id.* Churn was shot with Jones's gun, and Mitchell claimed Jones was the shooter. *Id.* at *1. This court affirmed Mitchell's convictions on direct appeal. *Id.* at *8.

Mitchell filed a PCR application, claiming he received ineffective assistance from defense counsel.[1] He asserts defense counsel should have deposed Jones before the trial. The district court found defense counsel "did attempt to depose

---

[1] Mitchell raised several claims of ineffective assistance of counsel before the district court. On appeal, he limits his claim to one issue. We do not address the other issues that were before the district court.

Jones prior to trial. She attempted to subpoena him for a deposition but was unable to obtain service." The court noted defense counsel had access to a lengthy videotape interview and a sworn statement Jones gave to officers, which were used to cross-examine Jones. In denying relief, the court stated:

> In addition, Mitchell has not shown prejudice. The trial transcript reveals that [defense counsel] conducted a vigorous cross-examination of Wade Jones. She impeached him with inconsistent statements he made to the police. She thoroughly explored her theory that the police coerced Jones into implicating Mitchell. She challenged his testimony regarding the events in the yard and prior threats by Churn.

Mitchell filed a timely appeal from the district court's denial of his PCR application.

## II. Standard of Review and Law Governing Ineffective-Assistance-of-Counsel Claims

We review claims of ineffective assistance of counsel de novo. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To establish a claim of ineffective assistance of counsel, an applicant must prove: (1) counsel failed to perform an essential duty and (2) the failure resulted in prejudice. *State v. El-Amin*, 952 N.W.2d 134, 138 (Iowa 2020). "We presume counsel performed competently unless the claimant proves otherwise by a preponderance of the evidence." *State v. Booth-Harris*, 942 N.W.2d 562, 577 (Iowa 2020). For the prejudice prong, an applicant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Boothby*, 951 N.W.2d 859, 863 (Iowa 2020).

### III. Ineffective Assistance

Mitchell contends that he received ineffective assistance because defense counsel did not depose Jones prior to his testimony during the criminal trial. He states defense counsel should have done more to try to depose Jones, such as requesting a continuance during the trial to depose him. Mitchell asserts that, in a deposition, evidence could have surfaced to show Mitchell did not know where the gun was located within Miller's house. He claims that without evidence that Mitchell retrieved the gun from the house, the theory that Mitchell shot Churn with the gun fails.[2]

We find Mitchell has not shown he was prejudiced by defense counsel's performance. Mitchell presented no evidence to show that if Jones had been deposed, his testimony would have been any different than his trial testimony. He presents only speculation that if Jones was deposed evidence might have emerged to show Mitchell did not know where the gun was located within Miller's house. *See Gronstal v. State*, No. 15-2113, 2017 WL 512482, at *3 (Iowa Ct. App.

---

[2] Mitchell is particularly critical of the following portion of Jones's testimony during the criminal trial:

> Q. Was your gun at the house that night? A. It was mine.
> Q. I mean, was your gun still at the house? A. Yeah.
> Q. Had you ever shown the gun to Bryan Mitchell? A. He probably seen it before, yeah. I never actually—
> Q. And you said you kept it under— A. My mom's bed.

Mitchell claims defense counsel should have asked a follow-up question to find out what Jones had started to say he had never actually done. He asserts Jones should have been questioned to determine whether Mitchell knew where the gun was located within the house. The problem with Mitchell's argument is that this exchange was between the prosecutor and Jones. On cross-examination after this line of questioning, Jones testified that he saw Mitchell come out of the house with the gun. And on redirect Jones testified that he saw Mitchell with a gun that he recognized as Jones's gun.

Feb. 8, 2017) ("[W]e will not predicate a finding of ineffective assistance on speculation."); *DeMoss v. State*, No. 11-1851, 2013 WL 104800, at *5 (Iowa Ct. App. Jan. 9, 2013) ("[S]uch speculation is insufficient to meet the prejudice prong of the ineffective-assistance-of-counsel test."). And Mitchell testified that he did not push his counsel to depose Jones because, through no fault of defense counsel, Mitchell mistakenly believed only witnesses that had been deposed could testify at trial.

"If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). Because we determine that Mitchell has not shown prejudice, we conclude his claim of ineffective assistance of counsel should be denied.

We affirm the district court decision denying Mitchell's PCR application.

**AFFIRMED.**